■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE FIGUEROA, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REYNOLDS REYES, Appellant. [597 NYS2d 685] —Judgment of the Supreme Court, New York County (Bernard Fried, J.), rendered January 16, 1991, after jury trial, convicting defendant Figueroa of two counts of rape in the first degree, and sentencing him to consecutive indeterminate terms of imprisonment of from 8⅓ to 25 years and from 2 to 6 years, respectively, and the judgment of the same court and Justice, also rendered January 16, 1991, convicting defendant Reyes of one count of rape in the first degree, and sentencing him to an indeterminate term of imprisonment of from 5 to 15 years, unanimously reversed, on the law, the judgments vacated, and the matters remanded to Supreme Court for separate trials.

Defendants were each accused of a sexual assault which allegedly occurred in a bathroom of the psychiatric emergency unit at the Metropolitan Hospital Center. They were jointly tried and convicted of rape in the first degree, Reyes of one count and Figueroa of two counts. Figueroa was also charged with one count of sexual abuse in the first degree for allegedly fondling the complaining witness while she was tied to a gurney, but he was acquitted on this charge. Each defendant

was alone with the complaining witness at the time of the two alleged rapes, but it is the prosecution's theory that they acted together as part of a common plan or scheme. No physical evidence was introduced at trial.

The complaining witness alleged at trial that, shortly after she was brought to the hospital and while she was still restrained on the gurney, defendant Figueroa fondled her and told her she would have sex with him. She maintained that it was at this time, while Figueroa was out of the room, that she removed and swallowed her diamond stud earrings. She said Figueroa told her that everyone on the staff was in on his plan and that she would "do it" with all of them. According to complainant, Figueroa directed her to go to the rear bathroom, ordered her against the wall and then, using a condom, had intercourse with her. About 15 minutes later, Figueroa again ordered her to go to the same bathroom. Defendant Reyes then entered. Complainant testified that she assumed Reyes was part of Figueroa's "plan" and begged him "not to do this." She tried to persuade Reyes to make a call for her. Reyes allegedly agreed but, when she moved towards the door, he told her she had "better do this first". Reyes, also using a condom, then had intercourse with her.

Defendant Figueroa pleaded not guilty and did not testify at trial. Reyes, both in a pre-trial statement to the police and at trial, admitted sexual contact with complainant but insisted that it was consensual. According to his testimony, "she told me that she needs me to do her the favor and that she'll return a favor to me." Reyes maintained Figueroa told him that complainant "was 'bugging out' and offered to do him a favor", that he told Reyes, "I did it with her", and joked about it and that it was Figueroa who supplied him with the condom.

On appeal, defendants contend that their guilt was not proved beyond a reasonable doubt and that, in any event, their due process rights were violated by Supreme Court's failure to grant the motion for severance. The People respond that the motion was unaccompanied by any elaboration on the facts sufficient to support the claim of inconsistent defenses and that, in any event, the decision to grant a severance was a matter of judicial discretion which will not ordinarily be disturbed on appeal *(People v Cruz,* 66 NY2d 61, *revd on other grounds and remanded* 481 US 186, *on remand* 70 NY2d 733). However, the court's discretion is not without limitation *(People v Cardwell,* 78 NY2d 996, 997) and, by this stage of the proceedings, pre-trial hearings had been conducted and the

pre-trial statement of codefendant Reyes had been submitted in support of Figueroa's pre-trial omnibus motion. The substance of the respective defenses had thus been presented to the court, and the subject of the redaction of Reyes's statement to police had been extensively discussed in the context of a *Bruton (Bruton v United States,* 391 US 123) motion *(People v La Belle,* 18 NY2d 405, 411).

The People's intimation that the court was not sufficiently apprised of the problem presented by the antagonistic defenses is uncompelling. An appellate court is empowered to consider the trial record retrospectively to determine whether an injustice has occurred or substantial rights of a defendant have been impaired *(People v La Belle, supra,* at 409). Moreover, at the time the application for severance on the ground of inconsistent defenses was made, counsel for defendant Figueroa had provided the court with a copy of the leading decision of the Court of Appeals in *People v Mahboubian* (74 NY2d 174), which is entirely dispositive of the issue.

The test set forth in *Mahboubian (supra,* at 184) is that "severance is compelled where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt". In that case, as here, the "defenses were not only antagonistic but also mutually exclusive and irreconcilable. The jury could not have credited both defenses" (74 NY2d, *supra,* at 185). One defendant, much like defendant Reyes herein, conceded taking part in an otherwise criminal act (the theft of artwork) but insisted his codefendant had arranged it as a publicity stunt to enhance the value of his art collection. The codefendant, like defendant Figueroa, disclaimed participation in any criminal activity.

As in *Mahboubian (supra),* the jurors in this case were faced with a forced-choice proposition: to the extent they believed that Reyes was manipulated by Figueroa into having sexual relations with complainant and that complainant was coerced by Figueroa's intimidation, they could not credit Figueroa's disclaimer of any involvement. Conversely, to the extent they believed Figueroa's disclaimer, they were compelled to reject Reyes's defense that, while sexual intercourse took place, any coercion was entirely the result of Figueroa's intimidation. Therefore, the jury in this case "could not have credited both defenses" *(People v Mahboubian, supra,* at 185; *compare, People v Castro-Restrepo,* 169 AD2d 454, *lv denied* 77 NY2d 993), substantially impairing the rights of defendants.

Beyond the problem presented by *Mahboubian (supra)*, there is the additional complication in this case that a necessary element of the crime—forcible compulsion (Penal Law § 130.35 [1])—is charged only to defendant Figueroa. The count of the indictment charging Reyes with first degree rape recites that he "engaged in sexual intercourse with [complainant] while intentionally aided by defendant Figueroa." Complainant testified only that it was Figueroa who intimidated her. On cross examination, she conceded that, during an interview with a detective concerning Reyes's involvement in the assault, "I never told him that he [Reyes] made any—used any force. I never told him that he directly threatened me, no." Therefore, even if the jury did not believe Reyes and rejected his defense of consent, it was nevertheless obliged to reject Figueroa's defense in order to find the requisite forcible compulsion to sustain a conviction against Reyes.

It is significant that, in the course of deliberations, the jury sent a note to the court asking, "Does the defendant have to have knowledge of an implied threat?" The court responded that it is not necessary that a defendant "heard or saw the threat if made" but that it is sufficient if "the circumstances allow you to infer or to conclude that he was aware that the requisite threat was made and that as a result he had sexual intercourse with the female [complainant] without her consent." It was apparent to the court and counsel that the jurors' question concerned defendant Reyes and, thus, it is clear that any compulsion in this case was ascribed to defendant Figueroa.

The prejudice sustained by Figueroa by joint trial of this case was severe, placing him in a virtually no-win situation. If the jury believed Reyes, Figueroa could be found guilty on that testimony alone. If, on the other hand, the jury disbelieved Reyes's defense to the point of finding him guilty, Figueroa's guilt would be a necessary prerequisite to a finding of forcible compulsion on the part of Reyes.

While the Trial Justice was faced with the application for severance without the advantage of the complete record *(People v Mahboubian, supra,* at 185), the substance of the respective defenses was known, both counsel had orally requested severance on the ground of "inconsistent defenses", and the court had been provided with a copy of *Mahboubian,* a case on all fours. The record in this matter demonstrates that the prejudice to defendants is such that the failure to grant the application for severance constitutes an abuse of discretion requiring reversal of the convictions and a new trial *(People v*

*La Belle, supra,* at 409). Were the issue not preserved for appellate review by timely objection (CPL 470.05 [2]; *People v Iannelli,* 69 NY2d 684, *cert denied* 482 US 914), this Court would nevertheless reverse the conviction as a matter of discretion in the interest of justice *(People v Jones,* 81 AD2d 22, 42).

In view of this disposition, this Court does not reach defendants' other contentions. Concur—Milonas, J. P., Ellerin, Kassal and Rubin, JJ.