Terence BODDIE, Petitioner,

v.

**NEW YORK STATE DIVISION OF PAROLE, et al., Respondents.**

No. 02 Civ. 8731(RWS).

United States District Court, S.D. New York.

Aug. 22, 2003.

Terence Boddie, Arthur–Kill Correctional Facility, Staten Island, NY, pro se.

Honorable Eliot Spitzer, Attorney General of the State of New York, Habeas Corpus Section, Criminal Division, New York, NY (Darian B. Taylor, Assistant Attorney General, of counsel), for Respondents.

### OPINION

SWEET, District Judge.

Terence Boddie, who is currently incarcerated at the Arthur–Kill Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his parole denial on November 17, 1998 violated his rights under New York State law and the U.S. Constitution. For the reasons set forth below, the petition is denied.

#### Prior Proceedings

Boddie's conviction arose out of the sexual assault of a twenty-seven year-old woman in Manhattan on April 20, 1991. Boddie and his two co-defendants, Matthew Randall and Ronald Austin, detained the victim in a locked bedroom while Randall pointed a shotgun at her and ordered her to undress. Randall, Boddie, and Austin each forced the victim to perform oral sex. Boddie's co-defendants also raped and sodomized the victim while Boddie was present. After the victim was released, she went directly to the police. The victim identified all three men (a fourth man present in the bedroom was never apprehended) and they were placed under arrest.

Boddie was tried in New York County Supreme Court before a jury and was convicted of four counts of Rape in the First Degree, five counts of Sodomy in the First Degree and two counts of Sexual Abuse in the First Degree. Boddie was sentenced to a total indeterminate period of six to eighteen years incarceration. The Appellate Division affirmed the convictions and sentences on April 2, 1996, *see People v. Boddie*, 226 A.D.2d 120, 640 N.Y.S.2d 47 (1st Dep't 1996), and the New York Court of Appeals denied leave to appeal on August 13, 1996. *See People v. Boddie*, 88 N.Y.2d 980, 672 N.E.2d 613, 649 N.Y.S.2d 387 (N.Y.1996).

On November 17, 1998, Boddie appeared before the New York State Parole Board for his initial parole hearing. The Parole Board denied parole, finding as follows:

Parole is denied for the following reasons: The instant offenses—Rape 1st, Sodomy 1st, Sexual Abuse 1st. Your criminal record includes a 1986 youthful adjudication. The instant offenses are an escalation of your criminal conduct. While incarcerated you've been denied an earned eligibility certificate. All factors militate against discretionary release by the parole panel.

While represented by counsel, Boddie instituted an administrative appeal, raising the following claims:

(1) The determination by the commissioners to deny Boddie release was arbitrary and capricious, pursuant to 9 N.Y.C.R.R. § 8006.3(a)(1);

(2) Boddie had no meaningful forum to bring his record before the Board, nor did the Board consider recidivist risk;

(3) The determination by Parole Board Commissioners Jones and Gailor to deny Boddie release was based on erroneous information pursuant to that term's meaning in 9 N.Y.C.R.R. § 8006.3(a)(2);

(4) The determination by Commissioners Jones and Gailor to deny Boddie's release for twenty-four months was excessive, pursuant to 9 N.Y.C.R.R. § 8006.3(a)(3).

Boddie supplemented this appeal with a *pro se* brief, raising the following claims:

(1) The Commissioners violated Boddie's rights when they penalized Boddie for exercising his Fifth Amendment privilege against self-incrimination;

(2) Section 8350.00 of the parole policy was violated when there were unauthorized persons at the parole hearing;

(3) The use of the nature of Boddie' crimes as the apparently primary reason, if not the sole reason for denying Boddie's parole was arbitrary, capricious and unlawful;

(4) The Parole Board was affected by errors of law in that it violated the prohibition against double jeopardy and the doctrine of collateral estoppel;

(5) Boddie's due process rights were violated when the Parole Board relied upon false and inaccurate information in the pre-sentence report, parole file and institutional file to deny Boddie parole release.

The Parole Board denied Boddie's administrative appeal by a decision dated August 6, 1999.

Boddie then filed a motion pursuant to New York C.P.L.R. § 78 with the New York Supreme Court, New York County, seeking review of the Parole Board's denial. The petition alleged the following violations:

(1) Boddie's statutory rights under Executive Law § 259–i(2)(a), and his constitutional rights under the Due Process Clause and Equal Protection Clauses were violated when Boddie appeared before the Parole Board via electronic teleconferencing;

(2) Boddie's constitutional rights under the Due Process Clause were violated when the Division of Parole followed the broad unwritten edict of Governor Pataki that all violent felony offenders should be held to their Conditional Release dates;

(3) Boddie's constitutional rights were violated by Parole Commissioners when Boddie was penalized for exercising his Fifth Amendment privilege against self-incrimination;

(4) The Parole Board violated § 8350.00 of the parole policy and procedure manual and Boddie's due process rights when unauthorized persons, namely the two technicians operating the teleconferencing equipment, were present at Boddie's parole board hearing;

(5) Boddie's due process rights were violated when the Parole Board relied on the nature of Boddie's crimes as the sole reason for denying Boddie parole release;

(6) The Parole Board violated the prohibition against double jeopardy and the doctrine of collateral estoppel by relying on the same criteria used by the sentencing court when it imposed Boddie's sentences;

(7) The determinations by Parole Commissioners Jones and Gailor to deny Boddie release for 24 months was excessive and serves as extra punishment.

Boddie also moved to have his Pre–Sentencing Report and Inmate Status Report reviewed and expunged of factually inaccu-

rate material. Justice Barbara Krapnick, on a default judgment, ordered the Parole Board to review their files and determine whether Boddie's Pre–Sentencing Report required modification, in light of Boddie's allegation that it contained inaccurate information. *In the Matter of Boddie v. Dodds,* Index No. 404153/99 (Sup.Ct., N.Y.County, December 15, 1999). In response, the phrase "admitted guilt in the instant offense" was removed from the Pre–Sentencing Report. Boddie's Inmate Status Report was also modified to redact that portion which indicated that Boddie had smoked cocaine and wielded a shotgun.

On May 1, 2000, New York Supreme Court Justice Bruce Allen dismissed Boddie's Article 78 petition on the merits, rejecting all of Boddie's claims. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* Index No. 404883/99, (Sup.Ct., N.Y.County, May 1, 2000). Justice Allen found that Boddie had never objected to the electronic format of his parole hearing at the time of the hearing, nor had he been prejudiced by the procedure. Boddie had also failed to cite to any material omissions in the recorded transcript, and had not demonstrated that the Parole Board had relied on any inappropriate materials when rendering its decision, even in view of Justice Krapnick's previous order that the Board review and remove any inappropriate material from Boddie's files. Rather, the transcript of the parole hearing revealed that Boddie had not offered to clarify the events of the crime and was reluctant to discuss his case at all. As such, Boddie could not "turn around and complain that the commissioners got the facts wrong." *Id.* The court found that "all [relevant statutory] factors were addressed at the hearing. That the Division [of Parole] has in recent years may have decided that the greatest weight is to be given to the nature of the crime for which the applicant

was convicted, making it difficult for one who has been convicted of the violent sex crimes petitioner committed to win early release, does not constitute an abuse of discretion." *Id.*

Boddie subsequently appealed that decision to the Appellate Division, Third Department. While that appeal was pending, Boddie appeared before the Parole Board on November 8, 2000 for his second hearing. The Board again denied parole, finding based on a review of Boddie's entire record that "if released at this time there is a reasonable probability that you would not live and remain at liberty without violating the law and your release at this time is incompatible with the welfare and safety of the community."

The appellate court dismissed the appeal of the 1998 parole denial on January 17, 2002 on the grounds that Boddie had since re-appeared for another parole hearing, rendering the appeal moot. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* 290 A.D.2d 327, 735 N.Y.S.2d 781 (3d Dep't 2002).

Before filing an administrative appeal of the 2000 parole denial, Boddie filed an Article 78 petition in New York Supreme Court, Albany County, challenging the Parole Board's decision to deny him parole release in 2000. In his motion, Boddie contended that the Parole Board had acted inappropriately by failing to postpone his parole hearing until a corrected pre-sentence report and Inmate Status Report were prepared, in light of Judge Krapnick's December 15, 1999 order. On May 3, 2001, Supreme Court Justice Thomas Keegan dismissed the petition on the ground that Boddie had failed to preserve the issue, having never raised the issue of his Pre–Sentencing Report or Inmate Report at his parole hearing; the court also noted that Boddie still had administrative

remedies. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* Index No. 7344–00, RJI No. 0100ST1478 (Sup.Ct., Albany County, May 3, 2001). This decision was affirmed on appeal on April 18, 2002 on the ground that Boddie had failed to exhaust his administrative remedies prior to submitting his Article 78 petition. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* 293 A.D.2d 884, 740 N.Y.S.2d 247 (3d Dep't 2002).

Boddie filed a subsequent Article 78 petition in Albany County, and this was denied as moot by order dated September 4, 2001. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* Index No. 2374–01, RJI No. 0101–ST1826 (Sup.Ct., Albany County, Sept. 4, 2001). After exhausting his administrative remedies in regards to his 2000 parole hearing, Boddie filed yet another Article 78 petition in Albany County, challenging the Board's 2000 decision for a variety of reasons, including its consideration of the seriousness of his offenses, his youthful offender adjudication, and a disciplinary violation later reversed. He also again challenged the use of the uncorrected pre-sentence report. Justice Bernard Malone denied the petition by order dated August 8, 2002, finding that "the transcript of the parole interview discloses that many of the statutory factors were discussed and the stated reasons for denial was the 'extremely heinous' nature of the crime and a belief that the petitioner would still pose a threat to society if not incarcerated." *In the Matter of Boddie v. N.Y.S. Div. of Parole,* Index No. 1567–02 (Sup.Ct., Albany County, August 8, 2002). The court found that the Board could properly consider the seriousness of the crime as well as Boddie's youthful offender adjudication in denying parole. *Id.* All the remaining

contentions were found to be equally without merit, given the Board's appropriate use of the applicable statutory factors. *Id.*

Boddie appeared before the Parole Board a third time on January 14, 2003. The Board again denied parole, again finding based on Boddie's record that "if released at this time there is a reasonable probability that you would not live and remain at liberty without violating the law and your release at this time is incompatible with the welfare and safety of the community."

The appellate court dismissed the appeal of the 2000 parole denial on June 12, 2003 on the grounds that Boddie had since appeared for another parole hearing in January 2003, rendering the appeal moot. *In the Matter of Boddie v. N.Y.S. Div. of Parole,* 759 N.Y.S.2d 910 (App. Div.3d Dep't 2003).[1]

Boddie timely filed the present habeas petition, *pro se,* on November 1, 2002, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 after first exhausting his remedies in state court. In place of a formal petition for habeas corpus, Boddie submitted the brief he had previously filed in May 2001 with the Appellate Division, First Department when he appealed the denial of his Article 78 petition by Justice Allen. Respondent New York State Division of Parole ("NYSDOP") filed opposition papers on February 5, 2003. Boddie responded on May 16, 2003, at which time the motion was considered fully submitted.

### Discussion

Boddie argues that his parole hearing deprived him of his constitutional rights by (1) having to appear before the Parole Board telephonically; (2) relying upon false and/or inaccurate information in mak-

---

1. Boddie filed a separate federal petition for habeas corpus, challenging the outcome of the 2000 parole hearing on April 14, 2003. That action is presently pending before this court.

ing its decision; (3) penalizing him for his exercise of his Fifth Amendment privilege against self-incrimination; (4) having unauthorized persons present at his parole hearing in violation of state law; (5) following an alleged directive by Governor Pataki to hold all violent felony offenders to their Conditional Release Dates; and (6) by failing to consider Boddie's institutional record, release plans and supplemental parole summary and letters.

Respondent NYSDOP opposes the grant of a writ of habeas corpus. NYSDOP acknowledges that Boddie's petition is timely filed and that Boddie has exhausted the remedies available to him in State court. But NYSDOP argues that because Boddie has received two subsequent parole hearings, and has been denied parole on both occasions, the challenges to his 1998 parole hearing are thereby rendered moot. NYSDOP also argues that any Fifth Amendment claims that Boddie may have raised are also moot because Boddie's direct appeal has now been exhausted, relieving Boddie of the possible penalty of having anything incriminating used against him in a later criminal proceeding.

### Standard of Review

 In addressing the present motion, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); see also *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993). Indeed, district courts should

"read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (quotations omitted).

Boddie has submitted as his habeas petition the exact brief which he had submitted on his behalf on direct appeal to the Appellate Division and which was rejected by that court. In determining whether the Appellate Division properly rejected Boddie's arguments,[2] this Court is constrained by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").[3] Under AEDPA, this Court must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers clear and convincing evidence of their incorrectness. 28 U.S.C. § 2254(e). A state court adjudication may be overturned only if it,

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law" includes only holdings of Supreme Court

---

2. Even if the Appellate Division did not explicitly consider every federal claim, its decision is nevertheless an adjudication on the merits. *Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001).

3. Pub.L. 104–32, 110 Stat. 1214 (effective April 24, 1996), 28 U.S.C. §§ 2244–66.

decisions and does not include dicta. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is contrary to clearly established Federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495. An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. *Williams*, 529 U.S. at 409–12, 120 S.Ct. 1495. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. *Williams*, 529 U.S. at 409, 120 S.Ct. 1495. Objective unreasonableness includes an unreasonable refusal "to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Kennaugh v. Miller*, 289 F.3d 36, 45 (2d Cir. 2002).

As an initial matter, Boddie incorrectly names NYSDOP as the respondent in this habeas action. The Second Circuit has held that "the Parole Board is not the 'custodian' of the prisoner, and therefore, in order to establish jurisdiction an action challenging parole procedures must be brought against the warden of the prison in which the petitioner is confined." *U.S. v. Rosenberg*, 108 F.Supp.2d 191, 201 (S.D.N.Y.2000) (*citing Billiteri v. United States Board of Parole*, 541 F.2d 938 (2d Cir.1976)). While both *Rosenberg* and *Billiteri* involved federal prisoners, the doctrine applies equally to state prisoners. Nevertheless, because Boddie is petitioning *pro se*, the petition will be treated as if Boddie had properly named the warden as respondent.

### NYSDOP's Mootness Argument Need Not Be Addressed

Boddie raises several challenges to the procedures of his initial parole hearing in November 1998. NYSDOP argues that each of Boddie's claims are rendered moot by the two subsequent parole hearings Boddie received in 2000 and 2003. NYSDOP relies for its argument on *Rodriguez v. Greenfield*, No. 99 Civ. 0532, 2002 WL 48440, at *4 (S.D.N.Y. Jan.10, 2002) (holding that petitioner's challenge to his 1998 parole denial is "now academic" because he was denied parole again in 1999 and 2000). Boddie acknowledges that it is New York law that any challenge to a parole board hearing must be dismissed if petitioner is reconsidered for parole. *See Aviles v. Travis*, 282 A.D.2d 787, 722 N.Y.S.2d 436 (3d Dep't 2001); *Jhang v. Travis*, 285 A.D.2d 874, 727 N.Y.S.2d 361 (3d Dep't 2001). Boddie also notes that a New York state prisoner is entitled to another parole board hearing "not more than twenty-four months" following the denial of parole. N.Y. Exec. Law § 259–i(2)(a). Because of the amount of time the Parole Board is given to respond to administrative appeals, and the further time to file an Article 78 petition and appeal any adverse ruling, Boddie alleges that by the time any challenge to a parole board hearing would make its way up to federal court, the petitioner would most likely be eligible for a new hearing, and the challenge rendered moot. He argues that any state relief is thereby rendered ineffective and functions to deny him due process. When interpreted in terms of the strongest arguments they suggest, Boddie is effectively claiming that for a federal court to repeat the dismissal of Boddie's challenge to his parole denial as moot would be to further deny him due process.

Boddie's argument has been raised before by petitioners seeking review of their parole board hearing who have not fully exhausted their state remedies, and who argue that the futility of state court review constitutes circumstances "that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii) (*quoted in Brown v. Thomas,* No. 02 Civ. 9257, 2003 WL 941940, at *1 (S.D.N.Y. March 10, 2003); *see also Washington v. Thomas,* No. 03 Civ. 363, 2003 WL 21262089, S.D.N.Y. May, 29, 2003); *Defino v. Thomas,* No. 02 Civ. 7413, 2003 WL 40502, at *3 (S.D.N.Y. Jan.2, 2003). Claims such as Boddie's have been called "potentially powerful." *Brown,* 2003 WL 941940 at *1, (*quoting Defino,* 2003 WL 40502, at *3). However, this thorny issue need not be addressed here. As the *Brown* court observed, "in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." 2003 WL 941940, at *1.

■■■■ Boddie makes seven claims in the present petition, as laid out in his brief to the Appellate Division which Boddie has submitted as his habeas petition.[4]

(1) Boddie's statutory rights under Executive Law § 259–i(2)(a), and his constitutional rights under the Due Process Clause were violated when Boddie appeared before the Parole Board via electronic teleconferencing;

(2) Boddie's rights under the Equal Protection Clause were violated when Boddie appeared before the Parole Board via electronic teleconferencing;

(3) Boddie's due process rights were violated when the Parole Board relied upon false and inaccurate information in the Pre–Sentence Report, Parole Summary and institutional file to deny Boddie's parole release;

(4) Boddie's constitutional rights were violated by Parole Commissioners when Boddie was penalized for exercising his Fifth Amendment privilege against self-incrimination;

(5) The Parole Board violated § 8350.00 of the parole policy and procedure manual and Boddie's due process and statutory rights when unauthorized persons, namely the two technicians operating the teleconferencing equipment, were present at Boddie's parole board hearing;

(6) Boddie's due process rights were violated when the Division of Parole followed the broad unwritten edict of Governor Pataki that all violent felony offenders should be held to their Conditional Release dates;

(7) Boddie's due process and statutory rights under N.Y. Executive Law §§ 259–i(1)(a) and 2(c)(A) were violated when the Parole Board failed to consider Boddie's institutional record, release plans and supplemental parole summary and letters.

Review of the state court proceedings is limited to the question whether Federal

---

4. Perhaps because of confusion over what constitutes "Exhibit A" of Boddie's petition, NYSDOP bases its opposition to Boddie's petition on the brief Boddie filed with the New York Supreme Court, New York County, in November 1999. The claims made in the two briefs are nearly identical. The one difference is the inclusion of an alleged double jeopardy violation by the Parole Board. This claim is without merit as "[t]he Double Jeopardy clause applies to judicial proceedings, not parole ... A denial of parole is a decision to withhold early release from the confinement component of a sentence, and it is not punishment for the purposes of the Double Jeopardy Clause." *Alessi v. Quinlan,* 711 F.2d 497, 501 (2d Cir.1983).

law was violated. *See* 28 U.S.C. § 2254(d). Accordingly, Boddie's claims that his state statutory rights cannot be considered unless the violation of those rights rises to a constitutional magnitude. Boddie's seven constitutional claims fall into three categories: due process claims, an equal protection claim, and a Fifth Amendment claim.

### Due Process Claims

Due process challenges to parole denials in New York State face a difficult hurdle as the Second Circuit has held that "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," and therefore a plaintiff has "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir.2001). The Court of Appeals based this holding on the fact that the "New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist . . . No entitlement to release is created [by the parole provisions]." *Id. (quoting Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir., 1979)). Instead, the parole provisions give the parole commissioners discretion to consider carefully the "circumstances of each individual case." *Id.* (quoting N.Y.C.R.R. § 8001.3(a)). This discretion is not unlimited, as the decisions of the parole board are structured by factors which must be considered. *See* N.Y. Exec. Law § 259–i(2)(c)(A) (listing five factors which shall be considered).

■■ Boddie's liberty interest is therefore "limited to not being denied parole for arbitrary or impermissible reasons." *Brown*, 2003 WL 941940, at *1 (*citing Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). The Eleventh Circuit has held that even when a "parole statute is framed in discretionary terms and therefore does not confer a liberty interest in parole," a parole board nonetheless "may not engage in 'flagrant or unauthorized action'." *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir.1991) (*quoting Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir.1982)). Parole may be denied based upon statutorily authorized consideration of an offender's background and the severity of his offense. *See Thurman v. Hodges*, 292 A.D.2d 872, 739 N.Y.S.2d 324 (4th Dep't 2002) (consideration of the serious and violent nature of petitioner's crimes comports with New York statutory parole scheme).

■ A review of the administrative appeals as well as the state court proceedings reveals no indication of any unauthorized action. The Parole Board properly considered all relevant statutory factors. The Appeals Unit made an appropriate review, noting that "every [statutory] factor need not be discussed or listed in the decision." (*citing People ex rel. Haderxhanji v. N.Y.S. Board of Parole*, 97 A.D.2d 368, 467 N.Y.S.2d 381 (1st Dep't 1983)). Justice Allen's decision on the merits properly considered and rejected Boddie's claims with regard to electronic teleconferencing, unauthorized persons, inaccurate information in the record, and the consideration of all statutory factors. *See In the Matter of Boddie v. N.Y.S. Div. of Parole*, Index No. 404883/99, (Sup.Ct., N.Y. County, May 1, 2000). Although Justice Allen's decision does not discuss Boddie's claim that the Board unfairly followed Governor Pataki's unwritten policy of not releasing violent felony offenders prior to their conditional release date, the holding with respect to teleconferencing applies equally to this claim: "Petitioner made no objection on the record . . . at the time . . . and has shown no prejudice." Finally, the Appellate Division's decision to deny the Article 78 petition as moot is in accordance with New York law.

## Equal Protection Claim

■ The Equal Protection Clause of the Fourteenth Amendment requires that all persons treated similarly should be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage," the courts must presume that the distinctions made are constitutional as long as they are "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■ Boddie does not claim that he is a member of a suspect class.[5] His claim is rather that he was singled out for disparate treatment. He therefore claims to be a "class of one." A successful claim under this theory requires a showing that (1) the claimant was similarly situated to others and received different treatment from those persons; (2) defendant's actions were "irrational and wholly arbitrary," and (3) plaintiff was subjected to "intentional disparate treatment." *Giordano v. City of New York,* 274 F.3d 740, 750–51 (2d Cir. 2001); *accord Barstow v. Shea,* 196 F.Supp.2d 141, 148 (D.Conn.2002). Boddie's claim may be dismissed because conducting a parole hearing via teleconferencing is neither irrational nor arbitrary. Justice Allen properly held that the use of such technology did not deprive Boddie of a personal interview as required by the parole statute, and found that Boddie had shown no prejudice as a result. The equal protection claim is therefore without merit.

## Fifth Amendment Claim

■ The Fifth Amendment protects against compelled self-incrimination in a criminal prosecution. *See Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 286, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998); *Baxter v. Palmigiano,* 425 U.S. 308, 316–318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). "The privilege extends to being compelled to provide information that can be used in future criminal proceedings and no adverse inference can be drawn in a criminal proceeding for failure to testify." *Rossney v. Travis,* No. 00 Civ. 4562, 2003 WL 135692, at *7 (S.D.N.Y. Jan.17, 2003) (*citing Baxter,* 425 U.S. at 317, 96 S.Ct. 1551; *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)).

Boddie has failed to demonstrate that the Parole Board penalized him for failing to answer questions relating to the crime for which he was convicted. But even if it could be shown that the Board had denied parole because of Boddie's silence, the Board's actions would not constitute compelled self-incrimination. In *Woodard,* the Supreme Court consider the constitutionality of Ohio's clemency program for death row inmates. An inmate could voluntarily request a clemency interview, but the parole authorities could draw adverse inferences from an inmate's failure to answer questions. The Supreme Court held that since the interview was voluntary, statements were not compelled within the meaning of the Fifth Amendment. The Constitution did not, therefore, prohibit the parole authorities from drawing an adverse inference from an inmate's refusal to answer questions during the clemency interview. *See Woodard,* 523 U.S. at 286, 118 S.Ct. 1244. The Court acknowledged

---

**5.** Although he does not raise the issue, merely being a prisoner is insufficient to place him in a suspect class. *E.g., Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997) ("neither prisoners nor indigents are a suspect class"); *Carbonell v. Acrish,* 154 F.Supp.2d 552, 561 (S.D.N.Y.2001) ("prisoners are not a suspect class").

that an inmate may feel pressured to answer questions and cooperate in order to improve the chance of clemency. The Court held, however, that such pressure did not implicate the Fifth Amendment. *See id.* at 288, 118 S.Ct. 1244. In *McKune v. Lile,* 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the Supreme Court extending that holding to encompass an involuntary sexual abuse treatment program in which inmates were required to sign an "Admission of Responsibility." Failure to sign resulted in the withdrawal of prison privileges and transfer to a potentially more dangerous maximum-security unit. *See id.* at 30–31, 122 S.Ct. 2017. The Court held that neither the involuntary nature of the program nor the automatic imposition of a penalty gave rise to a claim of compelled self-incrimination. *See id.* at 43–44, 122 S.Ct. 2017.

 Applying the rationales of *Woodard* and *McKune* to the New York parole scheme demonstrates clearly that a hearing before the Parole Board cannot constitute compelled self-incrimination within the meaning of the Fifth Amendment. While Boddie alleges he was placed in a "No–Win situation" by either being denied parole by his silence or saying something potentially incriminating, Boddie's circumstances are no different from the "Hobson's choice" faced by the respondent in *Woodard* "between asserting his Fifth Amendment rights and participating in the clemency review process, raising the specter of an unconstitutional condition." 523 U.S. at 279, 118 S.Ct. 1244.

### *Conclusion*

Each of Boddie's claims have been considered and dismissed as lacking merit. Boddie has shown no violation of his constitutional rights in the Parole Board's decision to deny him parole release. His petition for a writ of habeas corpus is therefore denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.S. Div. of Parole,* 209 F.3d 107, 111–113 (2d Cir. 2000).

It is so ordered.